IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY PFISTER | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CAROLYN W. COLVIN[1] | : | NO. 12-5332 |
| ACTING COMMISSIONER OF SOCIAL SECURITY | : | |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                             November 6, 2013
UNITED STATES MAGISTRATE JUDGE

## I.    INTRODUCTION[2]

This is an action brought pursuant to 42 U.S.C. §405(g) seeking judicial review of a final

decision of the Commissioner of the Social Security Administration (Commissioner) denying

Plaintiff Mary Pfister's claim for supplemental security income (SSI) under Title XVI of the

Social Security Act (the Act) and her claim for disability insurance benefits (DIB) under Title II

of the Act. Presently before this Court are the parties' pleadings, including Plaintiff's Brief and

Statement of Issues in Support of her Request for Review[3], Defendant's Response to Request for

Review of Plaintiff[4], and Plaintiff's Reply to Defendant's Response to Request for Review of

Plaintiff[5]. On April 23, 2013, counsel presented oral argument. For the reasons which follow, I

---

[1] On February 24, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] The Administrative Record, a Complaint, an Answer, Plaintiff's Brief and Statement of Issues in Support of her Request for Review; Defendant's Response to Request for Review of Plaintiff, and Plaintiff's Reply to Defendant's Response to Request for Review of Plaintiff have been filed and reviewed in this action.

[3] Hereinafter "Plaintiff's Brief".

[4] Hereinafter "Defendant's Response".

[5] Hereinafter "Plaintiff's Reply".

recommend that the relief sought by Plaintiff be denied and that judgment be entered in favor of Defendant confirming the decision of the Commissioner.

## II.     BACKGROUND AND PROCEDURAL HISTORY

Ms. Pfister was born on June 15, 1963. Administrative Record[6] at 162-164; 141-148; 198-200. She testified that she attended school through the twelfth grade then pursued vocational training to become an optician. Record at 28. She has past relevant work as an optician. Record at 44. Ms. Pfister alleges a disability onset date of April 1, 2006, arguing that she is disabled due to symptoms and limitations arising from her bipolar disorder, obsessive-compulsive disorder and panic disorder. Record at 11; 162-164; Plaintiff's Brief at 3.

Ms. Pfister protectively filed applications for DIB and SSI benefits on August 20, 2009. Record at 11; 198-200. The claims were initially denied, and, thereafter, she filed a timely written request for a Hearing. A Hearing was held on March 11, 2011, before Administrative Law Judge (ALJ) George C. Yatron, in Reading, Pennsylvania. Ms. Pfister testified, represented by her attorney, Alisha Williams, Esquire. Vocational Expert (VE) Paul A. Anderson also testified. Record at 11; 24-42. On March 25, 2011, the ALJ issued a decision in which he found that Plaintiff has the following severe impairments: mood disorders.[7] Record at 13. He further found that Ms. Pfister was not disabled because she has the residual functional capacity (RFC) to

---

[6] Hereinafter the "Record".

[7] The ALJ further opined:

The evidence of record documents [plaintiff] with a history of alcohol dependency and marijuana use. She admitted to having two DUI (driving under the influence) charges and was incarcerated on two different occasions; at least one incarceration took place during the period in question. In Dr. Shin's report of August 23, 2010, the [plaintiff] was noted as abstinent from alcohol since March 2009 (Exhibit 9F). Other evidence of record shows [plaintiff] reported on April 22, 2009 that she had been smoking marijuana for past six days but by May 14, 2009 [plaintiff] reported being off of marijuana for one month (Exhibit 3F).

Based on the evidence of record, at all times relevant to this decision [plaintiff's] substance abuse disorder is found to impose no more than minimal limitations. Consequently, this impairment is regarded as non-severe.

Record at 13-14.

perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple and routine instructions. Record at 16. Ms. Pfister sought review by the Appeals Council, which Was denied on July 20, 2012. Record at 1-3. On September 18, 2012, Plaintiff filed this action alleging that the ALJ failed to properly evaluate the medical evidence; he failed to properly evaluate Ms. Pfister's subjective complaints, and he erred by relying on the testimony of the VE because the hypothetical he posed omitted critical findings concerning Plaintiff's mental capacity. Plaintiff's Brief at 3-15.

### III.    SOCIAL SECURITY DISABILITY LAW

#### A.  Disability Determination

The Social Security Act authorizes several classes of disability benefits, including SSI and DIB benefits. In order to qualify for benefits, a claimant must show that there is some "medically determinable basis for an impairment that prevents him from engaging in 'substantial gainful activity' for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (*quoting Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999); 42 U.S.C. §423(d)(1)(1982). A claimant can establish a disability in either of two ways: (1) by producing medical evidence that one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (2000) or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. §423(d)(2)(A).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether or not a claimant is under a disability. 20 C.F.R. §§404.1520; 416.920. Step one states that an individual who is working will not be found to be disabled regardless of

medical findings. 20 C.F.R. §§404.1520(b); 416.920(b). Step two involves evaluating severe impairments. 20 C.F.R. §§404.1520(c); 416.920(c). Step three requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1. 20 C.F.R. §§404.1520(d); 416.920(d). Step four states that if an individual can perform past relevant work, he will not be found to be disabled. 20 C.F.R. §§404.1520(e); 416.920(e). Step five requires that if an individual cannot perform past relevant work, other factors must be considered to determine if other work in the national economy can be performed. 20 C.F.R. §§404.1520(f); 416.920(f). *See e.g., Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *Plummer,* 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the record. *Torres v. Harris*, 494 F.Supp. 267, 301 (E.D.Pa. 1980), *aff'd.* 659 F.2d 1071 (3d Cir. 1981).

## B. Judicial Review of Disability Decisions

The role of this Court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision. *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001); *Knepp v. Apfel*, 204 F.3d 78, 84 (3d Cir. 2000). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. *Id.*

It is not the role of this Court to re-weigh the evidence of record or substitute its own conclusion for that of the ALJ. *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Upon appeal to this Court, the Commissioner's factual determinations, if supported by substantial evidence, shall be conclusive. The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence. *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")

## IV.  **THE ALJ'S DECISION**

At the March 11, 2011 Hearing, the ALJ received medical evidence, heard Plaintiff's testimony and received testimony from a VE. After considering all the evidence of record, the ALJ concluded that Ms. Pfister has not been under a disability, as defined in the Social Security Act, from April 1, 2006, through the date of his decision. Record at 19. The ALJ found:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2012.

2. The [plaintiff] has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairment: Mood Disorders (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple and routine instructions.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404,1565 and 416.965).

7. The [plaintiff] was born on June 15, 1963 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from April 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

In evaluating the medical evidence, the ALJ determined:

The evidence of record documents [plaintiff] with a history of alcohol dependency and marijuana use. . . . In Dr. Shin's report of August 23, 2010, the [plaintiff] was noted as abstinent from alcohol since March 2009 (Exhibit 9F).

. . . . .

[Plaintiff] has a history of psychiatric hospitalization(s) and mental health treatment years prior to the alleged onset date. Medications at that time include Neurontin, Celexa and Depakote (Exhibits 1F, 2F). For purposes of this decision and the alleged onset date of April 1, 2006, the medical evidence of record is limited to the treatment records of Dr. Yong Shik Shin, who has served as [plaintiff's] psychiatrist since November 2001. . . . [T]he documented medical evidence of record from Dr. Shin does not begin before March 24, 2009 the date of Dr. Shin's psychiatric evaluation of the [plaintiff]. . . . [H]er then current medications included Seroqual (taken every other night); Depakote and Zoloft. On mental status examination [plaintiff] was alert and oriented times three. She was reported as tearful with mood swings, but with no symptoms of psychosis. [Plaintiff's] medications were adjusted and monthly follow up visits ensued. On April 15, 2009, additional adjustments were made and Risperdal was added to [plaintiff's] regimen. . . . Notes of August 27, 2009 indicate [plaintiff] going to jail (DUI) for three months instead of one year. . . . [H]er medications were renewed . . . Notes dated September 24, 2009 indicate [plaintiff] engaged in yoga and physical exercise . . . Medications were adjusted and the notes resume on December 9, 2009 (phone session) . . . [S]he was noted as sober since 2001 with the exception of one relapse. Since April 2009 [plaintiff] also attended weekly therapy sessions with Mary Sue Hardy. . . . During the January 19, 2010, session [plaintiff] was noted as doing good and still off the "weed" and alcohol.

Psychiatric visits were scheduled to resume on March 1, 2010 but [plaintiff] did not keep the appointment and she cancelled her March 29, 2010 appointment. . . .[Plaintiff] was to return for a follow up appointment in seven weeks (Exhibit 7F).

. . ., Dr. Yon Shik Shin completed two reports relative to [plaintiff's] condition and limitations. On August 3, 2010, Dr. Shin completed a psychiatric evaluation questionnaire and reported [plaintiff] date of first treatment as March 2003. Frequency of visits was noted as monthly with most recent examination conducted on August 3, 2010. Dr. Shin listed [plaintiff's] symptoms as including appetite disturbance with weight changes, sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, manic syndrome, intrusive recollections of a traumatic experience, hostility and irritability. [Plaintiff's] primary symptoms included anger outburst, mood swings, anxiety attacks and sleep disturbance. Dr. Shin reported that the [plaintiff] was markedly limited in 11 of the 20 areas assess; the remaining areas were considered not ratable on available evidence. Dr. Shin reported [plaintiff] incapable of even low stress work and that her condition results in mostly bad days. Finally, Dr. Shin indicated that on the average, and as a result of [plaintiff's] impairment or treatment, she would likely be absent more than three times a month (Exhibit 8F).

In a narrative report dated August 23, 2010, Dr. Shin noted [plaintiff's] medication regimen as including Neurontin, Elavil and Thorazine. Although on medication, [plaintiff] was reported to exhibit mood swings, anger outburst and impulsive behavior. Dr. Shin noted that the [plaintiff] remains labile, easily decompensates in any stressful situation, and is quite often expressing suicidality and becomes agitated. On mental status examination [plaintiff] was reported neatly dressed and well groomed; she was oriented to place and person with an affect described as tense and speech described as pressured with loud voice. [Plaintiff] was reported as having racing thoughts, is extremely anxious, and becomes very easily angered, frustrated and irritable. . . . Judgment and insight were limited and cognitive function was mildly impaired (Exhibit 9F).

. . . . .

. . ., the State agency psychological consultant found that [plaintiff's] combined mental impairments of depression, anxiety and substance abuse, resulted in no more than moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistene or pace, and one or two episodes of decompensation of extended duration (Exhibit 5F). Nonetheless, this consultant opined that the [plaintiff] is able to meet the basic mental demands of competitive work on a sustained basis (Exhibit 6F). . . .

In his report dated August 23, 2010, Dr. Shin, [plaintiff's] treating source, reported that [plaintiff] is unable to sustain concentration and attention at the workplace and she is not able to handle even mild stressful situations at work. Dr. Shin opined that the [plaintiff] is totally disabled at the present time (Exhibit 9F). In an earlier report dated August 3, 2010, Dr. Shin listed [plaintiff's] symptoms as including appetite disturbance with weight changes, sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, manic syndrome, intrusive recollections of a traumatic experience, hostility and irritability. However, [plaintiff's] primary symptoms included anger

outburst, mood swings, anxiety attacks and sleep disturbance. Dr. Shin reported that the [plaintiff] was markedly limited in 11 of the 20 areas assess; the remaining areas were considered not ratable on available evidence. Dr. Shin reported [plaintiff] incapable of even low stress work and that her condition results in mostly bad days. Finally, Dr. Shin indicated that on the average, and as a result of [plaintiff's] impairment or treatment, she would likely be absent more than three times a month (Exhibit 8F).

Record at 13-18.. When the ALJ determined that Ms. Pfister does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1, he opined:

    [Plaintiff] has a history of psychiatric hospitalization(s) and mental health treatment years prior to the alleged onset date. Medications at that time include Neurontin, Celexa and Depakote (Exhibits 1F, 2F).

    For purposes of this decision and the alleged onset date of April 1, 2006, the medical evidence of record is limited to the treatment records of Dr. Yong Shik Shin, who has served as [plaintiff's] psychiatrist since November 2001. Despite the longtime treating relationship, the documented medical evidence of record from Dr. Shin does not begin before March 24, 2009 the date of Dr. Shin's psychiatric evaluation of the [plaintiff]. [Plaintiff] reported an increase in mood swings for two months; her then current medications included Seroqual (taken every other night); Depakote and Zoloft. On mental status examination [plaintiff] was alert and oriented times three. She was reported as tearful with mood swings, but with no symptoms of psychosis. [Plaintiff's] medications were adjusted and monthly follow up visits ensued. On April 15, 2009, additional adjustments were made and Risperdal was added to [plaintiff's] regimen. On June 16, 2009 [plaintiff] admitted she is unmotivated and angry at the world. On June 30, 2009 [plaintiff] complained of not sleeping and still having severe mood swings. She was noted as still having mood swings and very depressed on July 23, 2009 when it was also reported [plaintiff] was having anger outbursts. Notes of August 27, 2009 indicate [plaintiff] going to jail (DUI) for three months instead of one year. She reported being unable to control her anger; her medications were renewed. Notes dated September 24, 2009 indicate [plaintiff] engaged in yoga and physical exercise; she also reported having three cleaning clients. Medications were adjusted and the notes resume on December 9, 2009 (phone session) when [plaintiff] reported going to jail only on the weekends for 48 weeks. She was noted as sober since 2001 with the exception of one relapse. Since April 2009 [plaintiff] also attended weekly therapy sessions with Mary Sue Hardy. By September 24, 2009 [plaintiff] reported feeling great and on October 15, 2009 reported feeling much better, not angry all the time and she laughed during the session; she reported feeling glad she is able to laugh instead of being so angry all the time. During the January 19, 2010, session [plaintiff] was noted as doing good and still off the "weed" and alcohol. She reported doing more housework, cooking and exercising on a regular basis. She reported having gone to Florida with the family for vacation (she had to fly while the family drove since she had to serve jail time on the weekend) (Exhibit 3F).

Psychiatric visits were scheduled to resume on March 1, 2010 but [plaintiff] did not keep the appointment and she cancelled her March 29, 2010 appointment. On March 25, 2010 [plaintiff] reported finishing her jail sentence, which lasted three months instead of a year; she had lost 45 pounds and was given medication refills. [Plaintiff] was to return for a follow up appointment in seven weeks (Exhibit 7F).

At the request of [plaintiff's] representative, Dr. Yon Shik Shin completed two reports relative to [plaintiff's] condition and limitations. On August 3, 2010, Dr. Shin completed a psychiatric evaluation questionnaire and reported [plaintiff] date of first treatment as March 2003. Frequency of visits was noted as monthly with most recent examination conducted on August 3, 2010. Dr. Shin listed [plaintiff's] symptoms as including appetite disturbance with weight changes, sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, manic syndrome, intrusive recollections of a traumatic experience, hostility and irritability. [Plaintiff's] primary symptoms included anger outburst, mood swings, anxiety attacks and sleep disturbance. Dr. Shin reported that the [plaintiff] was markedly limited in 11 of the 20 areas asses; the remaining areas were considered not ratable on available evidence. Dr. Shin reported [plaintiff] incapable of even low stress work and that her condition results in mostly bad days. Finally, Dr. Shin indicated that on the average, and as a result of [plaintiff's] impairment or treatment, she would likely be absent more than three times a month (Exhibit 8F).

In a narrative report dated August 23, 2010, Dr. Shin noted [plaintiff's] medication regimen as including Neurontin, Elavil and Thorazine. Although on medication, [plaintiff] was reported to exhibit mood swings, anger outburst and impulsive behavior. Dr. Shin noted that the [plaintiff] remains labile, easily decompensates in any stressful situation, and is quite often expressing suicidality and becomes agitated. On mental status examination [plaintiff] was reported neatly dressed and well groomed; she was oriented to place and person with an affect described as tense and speech described as pressured with loud voice. [Plaintiff] was reported as having racing thoughts, is extremely anxious, and becomes very easily angered, frustrated and irritable. [Plaintiff] admitted to mild paranoia under idea of references and her remote memory was good but retentive memory was impaired. Judgment and insight were limited and cognitive function was mildly impaired (Exhibit 9F).

Having considered the medical evidence and opinions (discussed in more detail below) the [ALJ] finds that at all times relevant to this decision the [plaintiff's] mental impairments singly and/or in combination, do not meet or medically equal the criteria of listings 12.04 and/or 12.06. In making this finding, the [ALJ] has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the [plaintiff] has mild restriction. In July 2009 [plaintiff] reported getting her children off to school and preparing their meals, etc. (Exhibit 3F). She is generally described as well dressed and reported in January 2010 that she is able to care for her personal needs (Exhibit 4E). In social functioning, the [plaintiff] has mild difficulties. In her function report [plaintiff] reported walking her dog around the block, takes her children to church weekly, shops in stores for food, clothing and books, but reported that she hates people. She also reported getting along okay with authority figures but fired from every job secondary to a lack of concentration (Exhibit 4E). With regard to concentration, persistence or pace, the [plaintiff] has moderate difficulties. In reaching this finding, the [ALJ] considered [plaintiff's] assertion of poor concentration and lack of focus. This is also consistent with the treatment notes of record (Exhibit 8F). As for episodes of decompensation, the [plaintiff] has experienced no episodes of decompensation of extended duration during the period in question.

Because the [plaintiff's] mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

With regard to the C criteria of these respective listings, there is no medically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and 1) repeated episodes of decompensation, each of extended duration; or 2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. Also, there is no medical evidence that at all times relevant to this decision that [plaintiff's] impairment has resulted in complete inability to function independently outside the area of [plaintiff's] home.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis,

Record at 14-16. Because he found that Ms. Pfister's impairments did not equal or meet the requirements of a Listing, the ALJ then determined whether or not Plaintiff retained the RFC to perform her past relevant work or other work existing in significant numbers in the national economy. After careful consideration of the record, the ALJ found that Ms. Pfister is unable to

perform any past relevant work.[8] Record at 18. However, the ALJ determined that Plaintiff has the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple and routine instructions". Record at 16. In determining Ms. Pfister's RFC, the ALJ considered the following:

In making this finding, the [ALJ] has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The [ALJ] has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 9605p, 96-6p and 06-3p.

In considering the [plaintiff's] symptoms, the [ALJ] must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the [plaintiff's] pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the [plaintiff's] pain or other symptoms has been shown, the [ALJ] must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which they limit the [plaintiff's] functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record.

[Plaintiff] is 47 years of age, right handed, married, and has two children ages 17 and 16. She testified she last worked in 2006 as a housekeeper; she stopped because she could no longer do the work. The [ALJ] recalls that the medical evidence of record shows on September 24, 2009 the [plaintiff] reported having three cleaning clients (Exhibit 3F). [Plaintiff] reported a history of two DUI charges resulting in two separate incarcerations. She last drank alcohol in 2009.

[Plaintiff] testified that she has a hard time focusing and following up on things. She stated that she has been fired from every job she has ever held because she cannot stay focused on the job. She alleged no exertional limitations. Her daily activities involve walking around the block, yard work, reading and watching television. She does not help her children with their homework and she attends addiction therapy class once a week and she sees the psychiatrist every three months. This is also questionable given the last documented visit by Dr. Shin was in

---

[8] The ALJ stated:

The [plaintiff] has past relevant skilled work performed at the light and sedentary levels of exertion and semi-skilled work performed at the medium exertion level. Accordingly, the [plaintiff] is unable to perform past relevant work.

Record at 18.

August 2010. [Plaintiff] reported having seizures triggered by anxiety and feeling a heaviness, like an elephant sitting on her for 5 to 15 minutes.

After careful consideration of the evidence, the [ALJ] finds that the [plaintiff's] medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

[Plaintiff's] assertion of wholly work preclusive limitations is not well supported by the medical evidence and treatment notes of record. She has not required any psychiatric hospitalizations during the period under review and her treatment has been routine and sporadic in nature with no indication of treatment continuing to date. [Plaintiff's] testimony is also at odds with the latest therapy notes of record showing significant improvement from September 2009 through January 29, 2010 to include [plaintiff] taking a vacation in Florida and traveling separately from her family due to her incarceration on the weekends. [Plaintiff's] assertion of seizures triggered by anxiety is also not borne out in the treatment notes of record, which again, abruptly end with Dr. Shin's August 2010 reports discussed in detail herein.

As for the opinion evidence, the State agency psychological consultant found that [plaintiff's] combined mental impairments of depression, anxiety and substance abuse, resulted in no more than moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation of extended duration (Exhibit 5F). Nonetheless, this consultant opined that the [plaintiff] is able to meet the basic mental demands of competitive work on a sustained basis (Exhibit 6F). Limited weight is accorded this assessment as it was made by a non-treating, non-examining physician (SSR 96-6p).

In his report dated August 23, 2010, Dr. Shin, [plaintiff's] treating source, reported that [plaintiff] is unable to sustain concentration and attention at the workplace and she is not able to handle even mild stressful situations at work. Dr. Shin opined that the [plaintiff] is totally disabled at the present time (Exhibit 9F). In an earlier report dated August 3, 2010, Dr. Shin listed [plaintiff's] symptoms as including appetite disturbance with weight changes, sleep disturbance, personality change, mood disturbance, emotional lability, recurrent panic attacks, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, social withdrawal or isolation, decreased energy, manic syndrome, intrusive recollections of a traumatic experience, hostility and irritability. However, [plaintiff's] primary symptoms included anger outburst, mood swings, anxiety attacks and sleep disturbance. Dr. Shin reported that the [plaintiff] was markedly limited in 11 of the 20 areas assess; the remaining areas were considered not ratable on available evidence. Dr. Shin reported [plaintiff] incapable of even low stress work and that her condition results in mostly bad days. Finally, Dr. Shin indicated that on the average, and as a result of [plaintiff's] impairment or treatment, she would likely be absent more than three times a month (Exhibit 8F). Although recognized as a treating source, no significant weight is accorded to Dr. Shin's opinions. The limitations set forth in Dr. Shin's reports are more restrictive than one would expect given the routine and sporadic treatment that seemingly ended in August 2010. Dr. Shin's opinion is at odds with the latest therapy notes of

record wherein [plaintiff] reported significant improvement during therapy sessions September 2009 through the last documented session in January 2010.

In sum, the above residual functional capacity assessment is supported by the evidence of record considered in its entirety.

Record at 16-18. The ALJ concluded that, considering Ms. Pfister's age, education, work experience and her RFC, there are jobs that exist in significant numbers in the national economy that she can perform. Record at 19.

Present at Plaintiff's hearing was VE Paul A. Anderson. The ALJ asked him whether jobs exist in the national economy for an individual with Ms. Pfister's age, education, work experience and RFC. As the ALJ noted:

In determining whether a successful adjustment to other work can be made, the [ALJ] must consider the [plaintiff's] residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the [plaintiff] can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the [plaintiff's] specific vocational profile (SSR 83-11). When the [plaintiff] cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the [plaintiff] has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

The [plaintiff's] ability to perform work at all exertional levels has been compromised by nonexertional limitations. To determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the [plaintiff's] age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as order clerk with 900 local/5,500 regional/128,000 national jobs; cashier II with 26,000 local/160,000 regional/4,000,000 national jobs; and laborer with 7,600 local/42,000 regional/986,000 national jobs. Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the [ALJ] concludes that, considering the [plaintiff's] age, education, work experience, and residual functional capacity, the [plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in

the national economy. A finding of "not-disabled" is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

Record at 19. Ms. Pfister was not found to have been under a disability, as defined in the Social Security Act, from April 1, 2006, through the date of the ALJ's decision. Record at 19.

## V. DISCUSSION

Plaintiff argues that the ALJ failed to properly evaluate the medical evidence, as well as Ms. Pfister's subjective complaints. She also claims that the ALJ erred by relying on the testimony of the VE because the hypothetical he posed omitted critical findings concerning Plaintiff's mental capacity. Plaintiff's Brief at 3-15.

### A. **Medical Evidence**

Initially, Ms. Pfister alleges that the ALJ failed to properly evaluate the medical evidence. She asserts that the RFC finding of the ALJ overstates Plaintiff's abilities and is not supported by the medical evidence in the record. She claims that the ALJ failed to offer appropriate reasons for rejecting the opinion of Dr. Shin.

It is the ALJ who determines what weight should be accorded to the medical opinions of record. 20 C.F.R. §§404.1527; 416.927. The only issue of appellate review before the court is whether substantial evidence supports the ALJ's decision. 42 U.S.C.§§405(g), 1383(c). Of the three sources of medical opinions (treating sources, examining sources, and non-examining sources), treating sources' opinions are only entitled to controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence. 20 C.F.R. §§404.1527(d)(2); 416.927(d)(2).

The first record evidence of psychiatric difficulties concerning Ms. Pfister subsequent to her alleged onset date of April 1, 2006, is a psychiatric evaluation dated March 24, 2009, three years later. She complained of mood swings for two months. She took Valium and drank beer

and had been arrested for DUI. Plaintiff reported a history of bipolar disorder, alcohol addiction and drug abuse. She had been sober for a number of years, but she reported smoking pot for three to four years. She was married, with two children, and she was self-employed in a cleaning business. Though tearful with mood swings, she was found to be alert and oriented times three, with no signs of psychosis. Medication changes were recommended. Record at 283-284. The next day, March 25, 2009, an Initial Mental Health Assessment was completed by Mary Sue Hardy, of Yong S. Shin MD and Associates. Ms. Pfister's previous diagnosis reads: ADHD, OCD, Bipolar DO, Anxiety and Depression. Ms. Hardy determined that Plaintiff did not meet criteria for higher level of care. A mental status exam revealed the Plaintiff to be neat, clean and dressed appropriately for the weather. Her behavior was cooperative, though her mood was sad and depressed. Speech was within normal limits; there were no thoughts of suicide, homicide, hallucinations or delusions. She was oriented times three, and her immediate memory was good, with recent and remote memory being fair. Her insight and judgment were "OK". Her medications consisted of Depakote and Zoloft. Record at 262-268.

Ms. Hardy maintained progress notes from Plaintiff's weekly therapy sessions. On April 3, 2009, Ms. Pfister stated that the "hardest thing" is waiting to hear what was going to happen to her as a result of her DUI. She reported attending AA meetings and leaving them feeling "more clear". She had cut down her marijuana habit by half, and anticipated being clean and sober by a target date of April 20th. Ms. Hardy recommended remaining abstinent, continuing to attend the 12-step meetings and to read their literature. She also recommended that Plaintiff continue to reduce her marijuana use. Record at 261. A week later, on April 10, 2009, Ms. Pfister found herself irritable and angry without drugs or alcohol. Nonetheless, she reported learning a lot at the meetings, and she knows now that she cannot drink anymore. She feels better when leaving

the meetings. Ms. Hardy recommended that Plaintiff continue to achieve abstinence from all drugs and alcohol; continue attending the 12-step meetings; read the handout on boundaries. Record at 261. A Psychiatry Note from Dr. Shin dated April 15, 2009, reveals only a numbness in Plaintiff's legs from the Seroquel, and appropriate medication changes were made. Record at 282. On April 22, 2009, Dr. Shin's psychiatry note indicates that Ms. Pfister had quit smoking pot for the past six days, which made her "hyper". Again, medication changes were made. Record at 281. On May 14, 2009, Dr. Shin reported that Plaintiff was still hyper, anticipating having to go to court and being put in prison. By then, she reported being off pot for a month. Record at 280. Ms. Pfister did not appear for her April 24, 2009, session with Ms. Hardy; however, she returned on May 18, 2009. While reporting "good" and "bad" days, Plaintiff reported that she was not drinking and that she had not smoked marijuana since April 20th, her target date. She reported differences she noticed since becoming clean, such as, "I am aware of what the children are doing and care". She found the hardest thing to be learning how to eat properly, rather than to rely on pot. Ms. Hardy continued to recommend abstinence, and she recommended that Ms. Pfister write in a journal. Record at 260. When Plaintiff saw Dr. Shin on June 16, 2009, she stated she felt unmotivated and angry at the world. She did not want to go to work. His notes also reveal an upcoming preliminary hearing for Ms. Pfister scheduled for August 8. His notes reveal no plans for treatment. Record at 278. At a therapy session with Ms. Hardy the same day, Ms. Pfister relayed to her the same feelings. However, Plaintiff said that she was proud of herself for being off marijuana for sixty days, and she needed to have some energy. She also described crying, having tremors when writing or her head shaking. She decided not to go back to AA meetings because "all the guys trying to hit on her". Her attorney had told her not to return to the meetings. Ms. Hardy recommended identifying the "pay off" for anger. Record at

259. In his June 30, 2009, psychiatry note, Dr. Shin noted Plaintiff's mood swings and the fact that she was not sleeping. Record at 277. Ms. Pfister stated to Ms. Hardy that she was "exhausted" when they met for a session on July 7, 2009. She raised her housecleaning fees as she believed that she was losing money in the job. She described being frustrated, especially in the evenings, in that she "wants to be in control". Though she stated that the only time things didn't bother her was when she was drinking or using marijuana, she indicated that she had had neither for four months. She also found that her medication was helping her get a better night's sleep. "I just want to get where I'm not always angry." Ms. Hardy recommended that Plaintiff make a list of all the things she had to be angry about in her childhood and adolescence. Record at 258. On July 23, 2009, Dr. Shin noted Plaintiff's mood swings, depression and anger outbursts and made appropriate medication changes. Record at 276. The same day, Ms. Pfister told Ms. Hardy of her unhappiness with shaking all the time. She feels she is "missing [her] life" She described her day as getting up, cooking breakfast, getting the kids off to school, going back to bed, kids coming home, getting them dinner, getting them to do their homework, going back to bed. She described getting more done when she was not on medications but was drinking beer. Ms. Hardy indicated that Ms. Pfister should read a handout on anger and be ready to discuss it at their next session. Record at 257. Ms. Pfister reported her shakiness, anger and tremors to Dr. Shin on August 27, 2009. She also indicated that she would go to jail for three months, instead of a year. Medication changes were made. Record at 275. Continued shakiness was a topic at Plaintiff's session with Ms. Hardy the same day. She felt it was causing her to be unable to do things with her children in public because it embarrassed them. She participated in deep breathing exercises. Ms. Hardy indicated that Ms. Pfister seems to be having anger from her "past abuse/rape/constant control and criticism that has been pushed down with alcohol and

drugs". Ms. Hardy recommended practicing deep breathing exercises three times daily. Record at 256. In his September 24, 2009, psychiatry note, Dr. Shin noted that Ms. Pfister was doing yoga and physical exercise, and she had three cleaning clients. She was less tremulous. Record at 274. The same day, Plaintiff said to Ms. Hardy, "I feel good!" She described a good week in which she made grilled chicken and corn on the cob on the grill. She feels proud to be cooking again. She mowed the lawn and cleaned the inside of the house. She said that she did not know what made a difference, but she and her sister talked and shared with each other "what our father did to each of us". She reported taking fewer medications. Ms. Pfister will consider staying home for the Holidays. She will also report and follow all legal requirements. Record at 256. Things showed even more improvement at Plaintiff's October 15, 2009, session with Ms. Hardy. Ms. Pfister described herself as "much better". She was no longer angry all the time, and she had brought the family back to church. Last week had been their eighth Sunday back to church. Knowing what would be happening to her legally helped her a lot also. Decreasing her medications stopped her trembling and hair loss. "I'm living again". She cleaned out and scrubbed everything. "She laughed thoroughly and stated . .I am so glad to be able to laugh instead of being so angry all the time". Ms. Hardy recommended that Plaintiff practice the "8 Steps" handout, continue exercise, healthy eating and stress management. Record at 255.

Ms. Pfister participated in a phone session with Dr. Shin on December 9, 2009, in which she explained that she went to jail only on the weekend, since the previous week. This would last for 48 weeks. She also reported being sober since 2001, with only one relapse. Medications were noted. Record at 271. A January 19, 2010, psychiatry note reveals that Ms. Pfister stopped taking a number of medications due to side effects. Record at 270; 339. In a session with Ms. Hardy the same day, Plaintiff reported "doing good . . . still off the weed and

alcohol". She revealed doing more housework, cooking more meals, doing twenty minutes of yoga three times a week, riding a bicycle. This weekend would be her eighth of 45 weekends in jail. She remained home with the children during the week, and her husband was with them on the weekends. The family went to Florida for vacation, with her flying there after her weekend prison time and home again before the next weekend, while the rest of the family drove. She also discussed her OCD and how long it takes her to do things, making her anxious. Ms. Hardy recommended practicing deep breathing for ten breaths three times daily. Record at 254, 332. Dr. Shin noted a limited improvement from February to May, 2010. Discharge medications were prescribed. He also noted that Ms. Pfister would be on probation for two years and state parole for three years. Record at 312. Dr. Shin's June 21, 2010, psychiatry note indicates that Ms. Pfister is "not angry". She has been sober seventeen years, and she quit smoking pot since March, 2009. She lost her driver's license for a year and a half, and it will be returned in 2011. Prison was traumatic. "Life is 'bad'". Again, medication adjustments were made. Record at 335. On August 3, 2010. Plaintiff told Dr. Shin that she gets 8 ½ hours sleep; however, people tend to make her anxious. New medication changes were made. Record at 334. The same day Ms. Pfister reported to Ms. Hardy that she still remained drug and alcohol free, and she had lost quite a bit of weight. "We found out I am hypoglycemic and if I don't eat every 2 hrs I get very mean/angry." Her son was in Florida for the summer and her daughter was working at Best Buy. Her approach to medications was discussed and she was told to inform Dr. Shin if the dosage was too high. She felt the medications were making her tired. Ms. Hardy recommended continuing normally with yoga and deep breathing exercises. Record at 331. Dr. Shin's psychiatry note of September 16, 2010, shows Plaintiff to be having difficulty with her sixteen-year-old daughter, and her husband cannot come home every weekend. If she does not take her

medications, she gets upset easily. Record at 333. Ms. Pfister reported to Ms. Hardy at the same time that sometimes she wakes up with a heavy feeling. Nonetheless, she has been taking her medications as she is supposed to and, consequently, she has not been agitated at other people's children or with her own children. She feels she is just her children's mediator, however, having no control over them anymore, and her husband is not very supportive. Nonetheless, the animals outside (rabbit, dog, groundhog) make her happy. Ms Hardy told her to continue taking care of herself and taking her medications as prescribed. When Plaintiff gets upset, she is to take a deep breath and "blow it out". She was to return for another session in four weeks. Record at 330.

As one reads through the psychiatry notes and progress notes of Dr. Shin himself and of Ms. Hardy, it becomes evident that Ms. Pfister has shown steady improvement at each session. On August 3, 2010, the same day that Dr. Shin completed a Psychiatric/Psychological Impairment Questionnaire concerning Ms. Pfister in which he noted numerous marked limitations, and he indicated that she would be unable to perform basic work-related activity, Ms. Pfister related to Ms. Hardy that it was her newly diagnosed hypoglycemia which may have been the cause of her mood swings. She thought her medications were making her tired, and it was suggested that she talk to Dr. Shin about that. Record at 316-323; 331. August 23, 2010, Dr. Shin wrote in a letter to Plaintiff's attorney that Ms. Pfister was not able to handle even mild stressful situations at work and that she was totally disabled at that time. However, in her next recorded session with Ms. Hardy, Plaintiff stated that she had been taking her medications properly and, thus, had not been agitated at children, either others or her own. Though she reports feeling that she is a mere mediator in her children's lives, that is a feeling that is not unfamiliar to many parents. She maintains a healthy outlook, enjoying other things, taking deep breaths when necessary. Record at 325-326; 330.

The ALJ clearly stated why no significant weight is accorded to Dr. Shin's opinions.

The limitations set forth in Dr. Shin's reports are more restrictive than one would expect given the routine and sporadic treatment that seemingly ended in August 2010. Dr. Shin's opinion is at odds with the latest therapy notes of record wherein [plaintiff] reported significant improvement during therapy sessions September 2009 through the last documented session in January 2010.

Record at 18.

A Mental RFC Assessment and a Psychiatric Review Technique were completed by Dennis C. Gold, PhD in regard to Ms. Pfister on March 2, 2010. Dr. Gold reviewed the medical record, and he found Plaintiff mildly limited in activities of daily living and sustaining moderate difficulties in maintaining social functioning and concentration, persistence or pace. He also noted she had experienced one or two repeated episodes of decompensation, with her one hospitalization being "in the distant past". Dr. Gold further opined that Ms. Pfister retains the ability to perform repetitive work activities without supervision[9] and that she is able to meet basic mental demands of competitive work on a sustained basis despite her limitations due to her impairment. She can make simple decisions and sustain a simple routine. Record at 294-306; 308-311. The ALJ's designation of limited weight to Dr. Gold's assessment, due to his status as a non-treating, non-examining physician, is appropriate.

---

[9] Interestingly, Dr. Gold indicates that he received an opinion from Dr. Shin on February 8, 2010, which he gave controlling weight in adopting his assessment.

The opinion stated within the record received 2/8/10 provided by Yong Shik Shin, M.D., a treating source, has been considered. The residual functional capacity assessment is consistent with the opinion of Yong Shik Shin, M.D. contained in the record received 2/8/10. The treating source statements in the record concerning the [plaintiff's] abilities in the areas of making occupational adjustments, making performance adjustments and making personal and social adjustments are well supported by the medical evidence and non-medical evidence in file. Therefore, the record submitted by Yong Shik Shin, M.D., received 2/8/10, is given controlling weight and adopted in this assessment.

The [plaintiff] is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment.

Record at 310.

In addition to Ms. Pfister's treatment records and the opinion evidence which was weighed appropriately by the ALJ, Plaintiff's activities of daily living belie the existence of a disabling condition. As Ms. Pfister progressed through her treatment procedures with Dr. Shin and Ms. Hardy, it is noted that she attended AA meetings and was able to stop smoking marijuana. She dealt with her imprisonment every weekend for 45 weekends. She became more aware of her children and their needs and cared for them appropriately. Though periodically lacking in motivation, she remained alcohol and drug free, and was proud of this achievement. She raised her fees in her housecleaning business when she felt it was necessary. Her desire and ability to cook and care for her home, both inside and out, increased, and that made her proud. She began to take her family back to church on a regular basis, and described herself as "living again". Besides her children, Ms. Pfister cares for pets. She does yoga and other physical exercise, such as bike riding and walking. The vacation to Florida, with Plaintiff traveling on her own back and forth, is noted in the record. Record at 15-17; 254; 255; 256; 257; 258; 259; 260; 261; 274; 330; 331; 332. As stated by Dr. Gold in his RFC assessment:

The [plaintiff's] ability to understand and remember complex or detailed instructions is limited, however, she would be expected to understand and remember simple one and two step instructions. Her basic memory processes are intact. She can perform simple, routine, repetitive work in a stable environment. She can make simple decisions. Moreover, she is able to carry out very short and simple instructions. She is able to maintain concentration and attention for extended periods of time. Additionally, she would be able to maintain regular attendance and be punctual. She would not require special supervision in order to sustain a work routine. Also, she could be expected to complete a normal workday without exacerbation of psychological symptoms. She is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. Furthermore, she is able to interact appropriately with the general public. She is able to maintain socially appropriate behavior. Her ADL's and social skills are functional from a psychiatric standpoint. She can function in production oriented jobs requiring little independent decision making. Moreover, she retains the ability to perform repetitive work activities without constant supervision.

Record at 310. Given the longitudinal record herein, the medical opinion evidence, and Ms. Pfister's activities of daily living, the ALJ reasonably restricted her to simple, routine

instructions at all exertional levels. Record at 16. Substantial evidence supports the ALJ's proper evaluation of the medical evidence, including his rejection of Dr. Shin's opinions, and his RFC determination.

## B. **Subjective Complaints**

Ms. Pfister next claims that the ALJ failed to properly evaluate her subjective complaints. Plaintiff's Brief at 11-13. It is the ALJ who makes credibility determinations. 20 C.F.R. §§404.1529; 416.929. The Third Circuit has indicated that an ALJ's credibility finding is generally entitled to great deference. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). The Court determines whether any reasonable fact-finder could have reached the credibility determination made by the ALJ given the evidence of record and the regulatory framework established by the Commissioner. *See Mounsour Medical Ctr.*, 806 F.2d at 1190 (3d Cir. 1986).

With regard to the evaluation of subjective symptoms in disability cases, the regulations require:

No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.

When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

SSR 96-7p, 1996 WL 374186 *1 (S.S.A.). A claimant's description of her symptoms, standing alone, is insufficient to establish an impairment. 20 C.F.R. §§404.1528(a); 416.928(a). An ALJ's determination must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear the weight the ALJ

gave to the claimant's statements and the reasons for that weight. SSR 96-7p, 1998 WL 374186 *2 (S.S.A.).

The ALJ determined that Ms. Pfister's "assertion of wholly work preclusive limitations is not well supported by the medical evidence and treatment notes of record". Record at 17. The therapy sessions which Plaintiff participated in with Ms. Hardy consisted of discussions of Ms. Pfister's difficulties and recommendations for coping with them. Such recommendations included: continuing to abstain from the use of drugs and alcohol; attending AA meetings and reading their literature; writing a journal; making a list of what has made Plaintiff angry in the past and present; practicing deep breathing exercises; participating in yoga classes and doing other physical exercise; eating healthy; continuing stress management. Record at 254; 255; 256; 257; 258; 259; 260; 261; 330; 331; 332. These sessions, as well as Dr. Shin's medication adjustments, which reveal a conservative treatment regimen, do not support Ms. Pfister's complaints of debilitating symptoms. She has required no psychiatric hospitalizations during the relevant period, just the above-mentioned routine appointments.

Plaintiff describes her daily activities in a Function Report-Adult dated January 14, 2010. The report tells of waking up at 6:30 a.m. and listening to her children get ready for school. After reading and napping during the day, she greets her daughter and son after school. Ms. Pfister describes walking her dog, fixing dinner, taking her children to church, doing laundry. She is able to take care of her personal appearance. Though stating that she never goes outside, she does state that she walks the dog, goes out in the car with her husband, shops for food, clothes and books. She enjoys watching television and reading. Plaintiff goes on to say that she spends no time with others and that no one likes her. During this time period, she was fulfilling her required weekend incarceration, attending sessions with Ms. Hardy and Dr. Shin, shopping with her

husband, and going to church. She describes an inability to concentrate and focus on things and difficulties with stress. Record at 173-180; 181-188. Four days later, Ms. Hardy's progress note reveals that Ms. Pfister is "doing good". She remained drug and alcohol free. She described doing more housework, cooking more meals, doing yoga three times a week, riding a bicycle, fulfilling her weekend incarceration obligation, and going on a Florida vacation with her family. Record at 254; 332. These activities also belie her statements of severe, work-preclusive limitations.

Plaintiff asserts that the ALJ misidentified her alleged "anxiety attacks" as "seizures". Plaintiff's Brief at 12. Whether these events are called "anxiety attacks" or "seizures" is of no moment. Ms. Pfister clearly described their symptomology in her testimony at the ALJ Hearing.[10] The record also reveals that, at a therapy session prior to the Hearing, Plaintiff describes sometimes waking up with a "heavy feeling". In spite of that feeling, Ms. Pfister indicates that she is taking her medications appropriately and is finding herself less agitated. She "will continue taking care of self . . . taking meds as prescribed . . . when upset, take a deep breath and blow it out". Record at 330.

Plaintiff also points out her past difficulty maintaining employment, due to an inability to concentrate. Plaintiff's Brief at 12. The ALJ noted that Ms. Pfister " reported getting along okay with authority figures but fired from every job secondary to a lack of concentration". Record at

---

[10] At the ALJ Hearing, Plaintiff testified as follows:

Q You stated in one of the forms that you filled out that the Neurontin was to help you with your anxiety and with seizures. What did you mean by seizures?

A They come whenever they feel like coming and what happens is my heart gets really super heavy almost like an elephant is sitting up on me and then I have to drink some water and the water helps opens up the pipes and then sometimes they only last five minutes and sometimes they last 15 minutes and I just try – I have to – I'm immobile when that happens. I have to sit down, I have to drink some water. I have to concentrate on how to get that breathing tube back open again. It's an ordeal.

Record at 36.

16. This work history was discussed and taken into consideration when the ALJ determined that Ms. Pfister is unable to perform her past relevant work. Record at 17-18.

Clearly the ALJ determined that Plaintiff's statements regarding the severity of her limitations were not supported by the record. The entire record, including medical records, opinions of the medical professionals, Plaintiff's activities of daily living, among other things, led the ALJ to question the credibility of Ms. Pfister's statements of disabling symptoms. Substantial evidence supports this finding.

### C. **VE Testimony**

Finally, Ms. Pfister claims that the ALJ erred by relying on the testimony of the VE because the hypothetical the ALJ posed omitted critical findings concerning Plaintiff's mental capacity. She further asserts that the ALJ's restriction to "no detailed instructions" does not comport with his findings of moderate restrictions of concentration, persistence or pace." Plaintiff's Brief at 13-15.

In order for a VE's testimony to provide an appropriate basis for decision-making, the ALJ must present the VE with a hypothetical inquiry that "encompasses all the limitations that the ALJ found . . ." *Plummer*, 186 F.3d at 431 (3d Cir. 1999). A VE's testimony may be relied upon as substantial evidence to support the ALJ's decision as long as the hypothetical presented to the VE "fairly set[s] forth every credible limitation set forth by the physical evidence". *Plummer, supra. See also Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Testimony addressing the hypothetical question submitted to the VE reads as follows:

Q Okay. I would like you to consider hypothetically an individual 47 years of age with training, education, and experience as in the present case; who is generally unimpaired exertionally; non-exertional limitation; no detailed instructions.

Given those facts and circumstances, is there any work the hypothetical individual could perform on the sustained basis including any of the past work of the [plaintiff]?

A None of the past work, Your Honor, in light of the fact that the lowest level was semiskilled which would be close to not having detailed instruction, but there would be certainly a number of other jobs falling within the wide exertional range that would fall within those guidelines such as a order clerk, food and beverage; sedentary; unskilled job; there's about 900 local labor market; 5,500 several regions; 128,000 nationally.

For the light, unskilled job, what would be an example would be a cashier II; there [] would be approximately 26,000 in the local labor market; 160,000 several regions; 4 million nationally.

And medium – at the medium exertional level would be the position of laborer, stores; that's a medium, unskilled position; SVP of 2; and the numbers there would be approximately 7,600 local labor market; 42,000 several regions; 986,000 nationally.

Q Is your testimony consistent with the Dictionary of Occupational Titles?

A it is.
. . . . .
EXAMINATION OF THE VOCATIONAL EXPERT BY THE ATTORNEY:
. . . . .
Q All right. Now assuming a hypothetical individual same age, education, and wrok experience; with non-exertional limitations only; assuming this person would be off task 20% of the workday.

Would that affect any of the jobs that you listed in the first hypothetical?

A That's right on the cusp. Usually we say anything more than 20% results in non-competitive employment; less than 20% results in competitive employment. So that's right on the cusp.

Q Okay. Using the same residual functional capacity. Assuming that person would need up to four unscheduled breaks during the day due to crying spells and/or panic attacks –

A Lasting –

Q – lasting up to 15 minutes each.

A Then there would be no competitive employment.

Record at 39-41.

Ms. Pfister claims that because the ALJ's failure to include his finding of Plaintiff's moderate limitations in concentration, persistence, or pace in his hypothetical to the VE constituted an error, citing *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004).

In *Douglas v. Astrue*, 2011 WL 482501 *4-5 (E.D.Pa. February 4, 2011), Plaintiff was also found by the ALJ to be suffering from a moderate impairment in concentration, persistence and pace, and he claimed that this finding was not sufficiently accounted for in the hypothetical presented to the VE. As explained by the Honorable Norma L. Shapiro,

> Plaintiff's assertion is based on his reading of *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (ALJ's hypothetical limiting plaintiff to simple, one-to-two step tasks did not sufficiently take into account the fact plaintiff "*often*" suffered from deficiencies in concentration, persistence and pace.") (emphasis in original). In *McDonald v. Astrue*, 293 Fed. App's 941 (3d Cir. 2008), the Court of Appeals found the distinction between a plaintiff who "*often*" suffers from deficiencies in concentration, persistence and pace and one who suffers only "moderate" deficiencies, dispositive in approving the ALJ's hypothetical limiting the plaintiff to simple, routine tasks. *Id.* at 946. . .
>
> In *McDonald*, the appellate court determined a hypothetical limiting plaintiff to "simple, routine tasks" was sufficient to account for a moderate limitation in concentration, persistence and pace. The court noted McDonald did not *often* suffer from deficiencies in concentration, persistence and pace, unlike the plaintiff in *Ramirez. Id.* at 946 n. 10; *see also Menkes v. Astrue*, 262 Fed. App'x 410-12 (3d Cir. 2008) (hypothetical including a limitation to simple, routine tasks sufficient to account for moderate limitations in concentration, persistence and pace); *Reid v. Astrue*, 2009 WL 2710243, at *6 (E.D.Pa. Aug. 28, 2009) ("Because the hypothetical question limited plaintiff to 'simple, repetitive tasks,' the question was sufficiently descriptive to encompass the finding that plaintiff had moderate difficulties in 'concentration, persistence and pace.").

*Id.* Like Douglas, Ms. Pfister was found to suffer only a moderate impairment in concentration, persistence and pace, making *Ramirez*, thus, distinguishable. The ALJ's hypothetical question herein more than adequately conveyed Plaintiff's vocationally relevant limitations.

Additionally, the ALJ's finding is consistent with the determination of Dr. Gold, in his RFC assessment concerning Ms. Pfister's ability to understand instructions:

> The [plaintiff's] ability to understand and remember complex or detailed instructions is limited, however, she would be expected to understand and remember simple one and two-step

instructions. Her basic memory processes are intact. She can perform simple, routine, repetitive work in a stable environment. She can make simple decisions. Moreover, she is able to carry out very short and simple instructions. She is able to maintain concentration and attention for extended periods of time. Additionally, she would be able to maintain regular attendance and be punctual. She would not require special supervision in order to sustain a work routine. Also, she could be expected to complete a normal workday without exacerbation of psychological symptoms. She is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. Furthermore, she is able to interact appropriately with the general public. She is able to maintain socially appropriate behavior. Her ADL's and social skills are functional from a psychiatric standpoint. She can function in production oriented jobs requiring little independent decision making. Moreover, she retains the ability to perform repetitive work activities without constant supervision.

Record at 310. Moreover, the findings of the ALJ remain consistent with Plaintiff's activities of daily living, as described above.

A review of the record reveals that the hypothetical inquiry presented to the VE encompasses all the credible limitations that the ALJ found. Consequently, the ALJ appropriately relied upon the VE's testimony, which may, in turn, be relied upon as substantial evidence to support the ALJ's decision.

## RECOMMENDATION

Consistent with the above discussion, it is recommended that the decision of the Administrative Law Judge dated March 25, 2011, be affirmed and that judgment be entered in favor of Defendant.

Plaintiff may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. *See* Fed.R.Civ.P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. *See Leyva v. Williams*, 504 F.3d 357, 364 (3d Cir. 2007).

M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

By E-mail:
Hon. Legrome D. Davis
Beth Arnold, Esq. fedcourt@binderlawfirm.com

M. Jared Littman, Esq.   jared.littman@ssa.gov
Roxanne Andrews, Esq.   roxanne.andrews@ssa.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARY PFISTER : CIVIL ACTION
:
:
v. :
:
:
CAROLYN W. COLVIN : NO. 12-5332
ACTING COMMISSIONER OF SOCIAL SECURITY :

## ORDER

AND NOW, this          day of          , 2013, upon consideration of
Plaintiff's Brief and Statement of Issues in Support of her Request for Review, Defendant's
Response thereto, Plaintiff's Reply and the record herein, and, after review of the Report and
Recommendation of M. Faith Angell, United States Magistrate Judge, it is hereby **ORDERED**
that:

1. The Report and Recommendation is hereby **APPROVED AND ADOPTED**.

2. The relief requested in Plaintiff's Brief and Statement of Issues in Support of her
   Request for Review (Docket Entry No. 9) is **DENIED**.

3. **JUDGEMENT IS ENTERED IN FAVOR OF DEFENDANT CAROLYN W.
   COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY AND
   AGAINST PLAINTIFF MARY PFISTER.**

4. The Clerk of Court shall mark this case **CLOSED** for statistical purposes.

BY THE COURT:

_____
LEGROME D. DAVIS, J.